## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

MARY MURPHY, *on behalf of herself and all others similarly situated*,

      Plaintiff,

v.

WEST PUBLISING CORPORATION, and
THOMSON REUTERS CORP.,

      Defendants.

Case No. 0:24-cv-01540

## <u>CLASS ACTION COMPLAINT</u>

## JURY TRIAL DEMANDED

_____

COMES NOW the Plaintiff, **MARY MURPHY** (hereafter "Plaintiff" or "Ms. Murphy"), on behalf of herself and all others similarly situated and by Counsel, and as for her Complaint against **WEST PUBLISHING CORPORATION** and **THOMSON REUTERS CORP.** ("Defendants") states as follows:

### PRELIMINARY STATEMENT

1.     This is an action (1) for statutory, actual, and punitive damages, costs, and attorneys' fees, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA"); (2) a class claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUPTA"), and (3) for damages under state law defamation in the alternative.

2.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in

1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b). This Section imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived.'") (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3.      To accomplish Congress's goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

4.      The Consumer Financial Protection Bureau has noted, "experience indicates that [consumer reporting agencies] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

5.      Statutes like the FCRA therefore provide consumers with the only mechanism by which they can force consumer reporting agencies to report accurate information about them.

6. Defendants are consumer reporting agencies that regularly assemble and sell consumer reports to other consumer reporting agencies, creditors, employers, insurers, and other users of consumer reports.

7. Defendants sell a consumer reporting product to various customers to "screen and validate" consumers across America, including reporting "death records" about such consumers.[1]

8. Defendants collect information from various sources, including consumer reporting agencies, in preparing reports like the one they sold about Plaintiff.

9. Here, Defendants sold a report to the Florida Retirement System, falsely identifying Plaintiff as deceased.

10. Not surprisingly, the Retirement System cut off Plaintiff's benefits upon learning, incorrectly, that she was deceased.

11. Defendants fell short of their duty under the FCRA, as they reported Plaintiff as deceased when she is not.

12. Alternatively, Defendants defamed Plaintiff to the Florida Retirement System by informing it that Plaintiff was deceased. When that occurred, the Retirement System ceased communicating with Plaintiff and otherwise refused to deal with her.

---

[1] Batch Services: Public Records Search | CLEAR | Thomson Reuters, Thomson Reuters, https://legal.thomsonreuters.com/en/products/clear-investigation-software/batch-services (last accessed April 29, 2024).

13.     Plaintiff brings nationwide class claims against Defendants under Section 1681e(b) of the FCRA, on behalf of a class of consumers whom Defendants reported deceased when they were not.

14.     Alternatively, Plaintiff brings a claim for defamation because Defendants reported her deceased when she was not.

## JURISDICTION & VENUE

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331,15 U.S.C. § 1681p, and supplemental jurisdiction under 28 U.S.C. § 1367.

16.     This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

17.     This Court also has jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a resident of Florida, while Defendants have their principal place of business in Eagan, Minnesota.

18.     As a result of Defendants' conduct, Plaintiff has suffered more than $75,000 in actual damages to her reputation.  She is also entitled to punitive damages.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) as Defendants reside within this District.

## PARTIES

20.     The Plaintiff is a natural person residing in Orlando, Florida and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

21.     Defendant West Publishing Corporation is a corporation regularly conducting business in Minnesota, through its principal place of business located in this District and Division.

22.     West Publishing Corporation is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

23.     Defendant Thomson Reuters is a corporation regularly conducting business in Minnesota and throughout the United States, through its principal place of business located in this District and Division.

24.     Thomson Reuters is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

### Section 1681e(b) of The Fair Credit Reporting Act Requires Substantive Investigations of Information Consumer Reporting Agencies Report

25.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

26.     Congress also gave individuals the right to sue reporting agencies for violations of FCRA. 15 U.S.C. §§ 1681n-p.

27.    "In recognition of the critical role that [consumer reporting agencies] play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by [consumer reporting agencies], Congress placed on [consumer reporting agencies] what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

28.    One of these measures, 15 U.S.C. § 1681e(b), deals with the procedures consumer reporting agencies must follow when collecting and transmitting information. Section 1681e(b) sets forth the consumer reporting agencies' overall duty:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke*, 2011 WL 1085874, at *4.

29.    Further, as Defendants are aware, even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the consumer reporting agencies' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible

accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

### *Defendants' Consumer Screening Product*

30.    Among other things, Defendants market a product under multiple labels including "PeopleMap, "Public Record Search" and CLEAR, which they tout as "powered by billions of data points and leverages cutting-edge public records technology to bring all key content together in a customizable dashboard."[2]

31.    Defendants further claim their products can help "[m]ove investigations forward confidently through a vast collection of public and proprietary records. Access exclusive data feeds, quality domestic data, and incarceration records with source transparency and frequent updates, all in a single platform."[3] CLEAR reports, in particular, contain troves of information about individuals, including aliases, court docket references, criminal history, and other information associated with a given name.

32.    None of this information is verified or otherwise vetted adequately by Defendants before a buyer of a CLEAR report sees it.

33.    The data that Defendants sell under the CLEAR product is in fact gathered through largely automated means and by webscrape, without any meaningful or reliable

---

[2] Locate, identify, & connect the dots in your research, Thomson Reuters CLEAR, https://legal.thomsonreuters.com/en/support/clear/training-materials/webinars    (last accessed April 29, 2024).

[3] https://legal.thomsonreuters.com/en/products/clear (last accessed April 29, 2024).

vetting or verification of accuracy and with only limited and partial data obtained from its sources.

34.    What information is not gathered by webscrape is purchased from other consumer reporting agencies, meaning it is information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" things like, in Plaintiff's case, retirement benefits. 15 U.S.C. § 1681a(d)(1).

35.    In other words, the data Defendants buy and use in their products is consumer reporting data gathered for consumer reporting purposes.

36.    Plaintiff acknowledges that Defendant Thomson successfully defended a case brought under the FCRA when a consumer sued after being denied a job based on the inaccurate contents of a CLEAR report. *Kidd v. Thomson Reuters Corp*., 299 F. Supp. 3d 400, 401 (S.D.N.Y. 2017), *aff'd*, 925 F.3d 99 (2d Cir. 2019). Defendant Thomson claimed in that case (whether actually true or not) that its products were not governed by the FCRA and thus are not entitled to the statutory preemption available under the statute. Thus, Plaintiff also brings state law claims, in the alternative.

### *Plaintiff Learns Defendants Are Reporting Her as Deceased*

37.    In or around early June 2022, Plaintiff, a pastor and retired schoolteacher, received a call from her mortgage provider stating it had not received payment from Plaintiff for the month of June. Upon investigating the matter, Plaintiff discovered her monthly retirement benefits had not been disbursed by the Florida Retirement System,

leaving Plaintiff with insufficient funds in her bank account and behind on her mortgage. During Plaintiff's investigation, on two separate occasions the Florida Retirement System stated it accessed Plaintiff's consumer report from Defendants and was advised that the Plaintiff "was deceased."

38.    Plaintiff is not deceased.

39.    The Social Security Administration Death Master Index did not and does not include Plaintiff's Social Security Number as that of a deceased person.

40.    Plaintiff was unable to make her monthly mortgage payment or purchase even the most basic of necessities based in whole or in part on inaccurate information contained in the consumer report compiled and supplied by Defendants.

41.    Shortly after discovering the inaccuracy, Plaintiff submitted an affidavit to the Florida Retirement System attesting to the status of her benefits, to dispute Defendants' inaccurate reporting of her as deceased. She included all personal identifying information in the affidavit.

42.    Nearly two months later, despite Plaintiff's affidavit submission, calls, and the very clear evidence that she is alive and not deceased, Plaintiff was still unable to make her mortgage payment and continued to get further behind due to the inaccurate death date reported by Defendants.

43.    Plaintiff spent months investigating the inaccurate information with Defendants and endured substantial hardship because of Defendant's failure to report accurate information within Plaintiff's consumer file.

44.     As a result of the Defendant's conduct, actions, and inaction, Plaintiff suffered damages to include, but not limited to, out-of-pocket expenses, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

45.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).   A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

46.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). Further, a lack of any internal procedures to anticipate or prevent inaccuracy is willful. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 249–50 (4th Cir. 2017).

47.     As detailed above, the FCRA Section at issue here, and informative guidance, have been around now for over 50 years. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

48.     The FCRA requires that Defendants must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

49.     Defendants do not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the

consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

50.    Defendants do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

51.    Defendants employ no procedures at all which assure that a consumer with a "deceased" mark on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

52.    Such a policy is unreasonable for a number of reasons, not the least of which is that Defendants nearly always possess other information—such as that the consumer is paying her insurance policies or entities are accessing the consumer's information from Defendants for various purposes—showing that the consumer is indeed alive.

53.    Even in instances where other data on the face of the consumer's report indicates that she is not deceased, Defendants employ no procedures which assure that a consumer with a "deceased" notation on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

54.    Once a "deceased" mark is placed on a consumer's report and the consumer disputes the accuracy of the reporting, Defendants will not correct the reporting.

55.    Defendants further know that reporting a consumer as deceased is the most harmful notation that can be attached to one's consumer file. There is no more derogatory notation—not bankruptcy, foreclosure, or repossession—than reporting a consumer as deceased.

56.     Defendants are therefore aware that reporting a consumer as deceased is devastating to the consumer because it effectively halts the consumer's ability to engage in any market.

57.     Defendants have been on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit, denied employment and government benefits, and experience government benefit terminations specifically because Defendants are reporting them as "deceased."

58.     Defendants know that thousands of consumers are erroneously marked as "deceased" on their consumer reports, but said consumers are not on the Death Master File and are in fact, alive.

59.     Nevertheless, Defendants employ no procedures which assure that a consumer marked as "deceased" on Defendants' consumer reports is, in fact, deceased.

60.     Defendants also do not employ adequate procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

61.     At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants.

62.     At all times pertinent hereto, the conduct of Defendants as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff.

63.    At all times relevant to this Complaint, Defendants' conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendants' conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

64.    Defendants' conduct was likewise willful because they indiscriminately noted Plaintiff as deceased when they knew that she is alive.

65.    Defendants' procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (Class Claim)

66.    Plaintiff repeats the allegations in the previous paragraphs as though fully set forth herein.

67.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of the following Inaccuracy Class, of which she is a member, and initially defined as:

> All natural persons who (a) were the subject of search results furnished by Defendants to a third party within the five years before the filing of this action; (b) where that report identified the person as deceased with a purported date of death more than two months prior to the report; and (c) where the person identified in the report was not deceased.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

68. **Numerosity**. Plaintiff alleges that the Inaccuracy Class is so numerous that joinder of the claims of all class members is impractical. Defendants operate as a nationwide consumer reporting agency, and certainly have sold tens if not hundreds of thousands of consumer reports during the class period. Given the common nature of Defendants' "deceased" reporting, the class size will easily exceed hundreds or thousands of consumers. The names and addresses of the class members are identifiable through documents maintained by Defendants, and the class members may be notified of the pendency of this action by publication or mailed notice.

69. **Existence of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendants had reasonable procedures to assure that they accurately identified individuals as deceased; (b) whether Defendants' conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

70. **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This

claim challenges the consumer reporting procedures of Defendants and does not depend on any individualized facts.

71.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

72.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a.    As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendants' conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

    b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually.

Further, most consumers affected by Defendants' conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are classwide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

73.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff and the Inaccuracy Class. Despite Defendants knowing or at least having reason to know Plaintiff and the class members were alive, they published their consumer reports to end users indicating consumers were deceased.

74.    Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o. Plaintiff and each class member are entitled to recover actual and/or statutory damages, punitive damages, costs, and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681o, n.

## COUNT II: VIOLATION OF THE FLORIDA
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Class Claim)

75.    Plaintiff realleges and incorporates the paragraphs above as if fully set out herein.

76.     Plaintiff is a consumer under the Florida Deceptive and Unfair Practices Act, FDUTPA. Fla. Stat. § 501.203(7).

77.     This cause of action is brought pursuant to the FDUTPA, which, pursuant to Fla. Stat. § 501.202, requires such claims be "construed liberally" by the courts "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

78.     Defendants have engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and/or commerce in the State of Florida.

79.     Specifically, Defendants reported Plaintiff as deceased to at least one third party when Plaintiff is in fact alive, and this prevented Plaintiff from collecting her retirement benefits and covering her monthly expenses, including her mortgage payment.

80.     The above misconduct is unlawful trade or commerce and is prohibited by the FDUTPA. Fla. Stat. §§ 501.203(8), 501.204.

81.     The FDUTPA makes it unlawful for any person or corporation to commit any "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.204 (2014).

82.     As a result of Defendants' misconduct, Plaintiff suffered substantial harm, including lost money, lost time, frustration, anxiety, and other emotional distress.

83.     Because Defendants have not corrected their procedures, Plaintiff is at risk of being erroneously reported as deceased again.

84. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of the following Florida Inaccuracy Class, of which she is a member, and initially defined as:

> All natural persons who (a) were the subject of search results furnished by Defendants to a third party within the four years before the filing of this action while residing in the state of Florida; (b) where that report identified the person as deceased with a purported date of death more than two months prior to the report; and (c) where the person identified in the report was not deceased.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

85. **Numerosity**. Plaintiff alleges that the Florida Inaccuracy Class is so numerous that joinder of the claims of all class members is impractical. Defendants operate as a nationwide consumer reporting agency, and certainly have sold tens if not hundreds of thousands of consumer reports during the class period. Given the common nature of Defendants' "deceased" reporting, the class size will easily exceed hundreds or thousands of consumers. The names and addresses of the class members are identifiable through documents maintained by Defendants, and the class members may be notified of the pendency of this action by publication or mailed notice.

86. **Existence of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendants committed unconscionable or unfair acts in producing reports that falsely labeled consumers has deceased; (b) the proper measure of damages; and (c) the proper scope of injunctive or declaratory relief.

87.    **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, challenges procedures of Defendants and does not depend on any individualized facts.

88.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

89.    Certification of the class for injunctive or declaratory relief is appropriate under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

90.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.    As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendants' conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can

be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

91.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendants' conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are classwide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

92.    Plaintiff and Florida Inaccuracy Class Members are entitled to recover their actual damages, attorneys' fees, and court costs, as well as injunctive relief. FLA. STAT. §§ 501.211(2), 501,2105(1).

## COUNT III: DEFAMATION
### (Individual Claim)
### (In the alternative)

93.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

94.    Plaintiff brings this claim in the alternative to her FCRA claim.

95.    Defendants published false information that Plaintiff was deceased to at least one third party, the Florida Retirement System.

96.    Defendants were aware that this false information would damage Plaintiff and her ability to receive benefits from the Florida Retirement System she was lawfully entitled to receive.

97.    Defendants recklessly, maliciously, and/or intentionally published and disseminated false and inaccurate information (i.e., that Plaintiff was deceased) concerning Plaintiff with knowledge of the falsity and inaccuracy of the matters published or reckless disregard for the truth of the matters published.

98.    As a result of this publication, Plaintiff suffered harm to include, but not limited to, loss of timely payment of her retirement benefits, out-of-pocket expenses, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

99.    Plaintiff is entitled to recover compensatory and punitive damages and costs against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, seeks the following relief:

a.    Determining that this action may proceed as a class action under Fed. R. Civ. P. 23;

b.    Designating Plaintiff as the class representative for the Classes;

c.    Designating Plaintiff's Counsel as counsel for the Classes;

d.    Issuing proper notice to the Classes at Defendants' expense;

e.    Declaring that Defendants committed multiple, separate violations of the FCRA and FDUPTA;

f.      Awarding actual and/or statutory damages and punitive damages as provided by the FCRA;

g.      Awarding actual damages and injunctive relief as provided by the FDUPTA;

h.      Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA and FDUPTA;

i.      In the alternative, finding that Defendants committed defamation and awarding all available damages, attorneys' fees and costs, and other relief; and

j.      Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff, on behalf of herself and the Classes, demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

**MARY MURPHY**

Date: April 29, 2024

*/s/ John Albanese*
John Albanese, Bar No. 0395882
**BERGER MONTAGUE PC**
1229 Tyler St. NE, Suite 205
Minneapolis MN 55413
(612) 594-5997
jalbanese@bm.net

Craig C. Marchiando (*pro hac vice forthcoming*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601

Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: craig@clalegal.com

*Counsel for Plaintiff*